BRADY, Justice:
This suit involves the construction of a contract under which Murray T. Peavey, complainant below and appellee here, merged and combined his accounting practice with the accounting firm of Everette Boutwell, Aubrey Boutwell, Tom Henderson and William Pope, defendants below and appellants here. The Second Chancery Court District of Jones County, Mississippi, awarded appellee Peavey a judgment in the amount of $36,342. The decree also directed that a check in the amount of $400 in custody of the clerk of the court be delivered to the appellee, with the clerk’s endorsement of the appellants’ names thereon. A purchase money lien was impressed on certain property described in the decree as being in the hands of the appellants. From that decree this appeal is perfected.
The unique contract, which is the basis of this suit, is as follows:
AGREEMENT OF MERGER
THIS AGREEMENT was entered into on the date indicated below by and between MR. C. EVERETTE BOUTWELL, an adult resident citizen of Laurel, Mississippi, (hereinafter referred to as Boutwell) and MURRAY PEAVEY, an adult resident citizen of Pascagoula, Mississippi, (hereinafter referred to as Peavey) ;
WITNESSETH:
WHEREAS, Boutwell and Peavey are both engaged in the practice of the Profession of Accountancy; and
WHEREAS, both parties desire to merge or combine a certain portion of their accountancy practice in order to secure certain economies of operation;
NOW, THEREFORE, for and in consideration of the sum of TEN DOLLARS ($10.00) cash in hand paid by Boutwell to Peavey, the mutual covenants herein contained, and other good and valuable considerations, all of which is hereby acknowledged, the parties hereto, do hereby mutu *872 ally bind and obligate themselves, their heirs and assigns as follows, to-wit:
1. The parties hereto do hereby agree to merge and combine their respective accounting practices in the area of Pasca-goula, Jackson County, Mississippi, effective February 1, 1969. As of that date, the practice of both Peavey and Boutwell is to be conducted under the name of Bout-well, Henderson, Pope and Boutwell and all income received or receivables accrued after said date shall be the exclusive property of said firm, subject to certain exceptions set out below, and upon compliance by the parties hereto to the conditions specified herein.
2. On or before March 1, 1969, the firm of Boutwell, Henderson, Pope and Bout-well shall purchase from Peavey those certain items of office equipment reflected on Exhibit “A” attached hereto and made a part hereof as if copied in full, for the sum of $1,075.00, and the assumption of that certain indebtedness on a multilith machine in the amount of $760.54 payable in 22 monthly installments of $34.57 each. Peavey hereby stipulates that he has good and merchantable title to said equipment and machinery, and except for the encumbrances noted above on the multilith machine, that Peavey is authorized and empowered to alienate same.
3. As additional consideration to Peavey for the combination and merger of his accounting practice, the firm of Boutwell, Henderson, Pope and Boutwell agrees to assume, and does hereby assume, those obligations of Peavey totaling $9,351.68, and as more fully set forth on Exhibit “B” attached hereto and made a part hereof, and specifically, that obligations of Peavey to a Mr. John Cox of Ornsboro, Kentucky, in the amount of $3,855.55, in 7 principal installments of $500.00 each and 1 installment in the amount of $355.55 plus interest on each note, rather than on the unpaid balance. Boutwell hereby agrees and specifically obligates himself to pay said liabilities and obligations in accordance with the terms thereof. Any indebtedness of Peavey’s in excess of the sum of $9,-351.68, shall be reimbursed to the firm of Boutwell, Henderson, Pope and Bout-well by Peavey immediately upon receiving from said firm a certified statement as to the amount of said excess.
4. Peavey agrees to, and hereby becomes, an employee of the firm of Bout-well, Henderson, Pope and Boutwell, which employment shall continue from the period of February 3, 1969, to March 15, 1969, for the sum of $750.00 to be payable by the firm to Peavey on February 15, 1969, and a payment in the same amount to Peavey on February 28, March 15, and March 28, 1969.
5. Should Peavey elect, on March 15, 1969, not to continue with his employment by Boutwell, Henderson, Pope and Bout-well, said firm shall at that time deliver to Peavey a check in the amount of $1,750.00, dated March 31, 1969, together with 51 serially numbered Promissory Notes each in the amount of $401.00, the first of said notes maturing on December 10, 1969, and one maturing on the same day of each consecutive month thereafter, all without interest, until the principal amount of said sum has been paid in full. Each of said notes shall provide that should one or more be not paid within 60 days of its due date, all the remaining and unpaid notes, at the election of the holder, shall become immediately due and payable on demand. Should Peavey elect not to remain as an employee of Boutwell, Henderson, Pope and Boutwell, and said firm pursuant to the provisions of this paragraph delivers to Peavey the serially numbered notes described above, then Peavey hereby binds and obligates himself to guarantee to said firm that said firm will have gross billings from accounting work attributable to the year 1969 in the amount of $31,560.00 from those accounts listed on Exhibit “C” *873 attached hereto and made a part hereof as if copied in full. Should the total billings from said accounts be less than reflected on Exhibit “C”, then Peavey shall deliver to the firm of Boutwell, Henderson, Pope and Boutwell sufficient of the last maturing serially numbered Promissory Notes equal to the decrease in said billings. On the other hand, if said billings by the firm on said accounts exceed the sum of $31,500.00 then the firm of Bout-well, Henderson, Pope and Boutwell shall deliver to Peavey a Promissory Note for said excess, payable without interest after the last maturing of the serially numbered notes described above has been paid. Should Peavey elect not to remain as an employee of the accounting firm, then upon receiving the Promissory Notes described above, all files, papers and accounts formerly belonging to Peavey shall become the property of the firm of Bout-well, Henderson, Pope and Boutwell. In order to properly apply the provisions of this paragraph, the firm of Boutwell, Henderson, Pope and Boutwell shall render an accounting to Peavey on or before March 31, 1970, of the billings to those accounts listed on Exhibit “C” attached hereto.
6. Notwithstanding anything in the above provisions to the contrary, it is hereby agreed by the parties hereto that Peavey shall retain and be responsible solely for those accounts receivable from his practice of accountancy as of January 31, 1969, together with any fee received from those accounts listed on Exhibit “D” attached hereto and made a part hereof as if copied in full. The parties hereto hereby agree that Peavey has worked on the accounts listed on Exhibit “D” attached hereto and that all sums produced from said accounts for work pertaining to the calendar year 1968 shall be the sole and exclusive property of Peavey. Nonetheless, upon the completion of the work on said accounts, all of the files and papers relating thereto shall become the property of the Boutwell, Henderson, Pope and Boutwell firm.
7. If Peavey elects not to continue as an employee of said firm, then in that event he binds and obligates himself not to practice the pi'ofession of accountancy within an area of 100 miles from the County Courthouse, Pascagoula, Mississippi, for a period of 4 years. No part of the consideration herein expressed is allocable to this obligation assumed by Peavey, it being the intention of the parties that this agreement by Peavey is incidental to the other provisions of this contract.
IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals this the 10 day of February, 1969.
/s/ Murray L Peavey /s/ C. Everette Boutwell MURRAY L. PEAVEY C. EVERETTE BOUTWELL
EXHIBIT "A"
FURNITURE AND FIXTURES
Executive Desk $ 275.00
Sofa 100.00
Chairs (three) 105.00
Secretarial Chair 37.50
Executive Chair 95.00
Files 90.00
Marchant adding machine 187.50
Fronto Files 35.00
Total $ 925.00
EXHIBIT "B"
LIABILITIES
Smith Corona Marchant $ 118.12
Office Supply Company 34.33
Harvey Lane Chevrolet 75.00
Gulf National Car Rental 212.36
Markland, Inc. 875.00
Matthew Bender 173.80
Addressograph Multigraph 273.49
Prentice Hall, Inc. 557.99
Bush Office Supply 27.32
Gulf Coast Glass 42.85
Merchant & Marine Bank 2,500.00
Hardy & Jacobson 264.00
Internal Revenue Service 255.72
Robert James, Inc. 6.75
Travel Affiliates 79.40
Total $5,496.13
John W. Cox $4,355.55
Less: January payment 500.00
$3,855.55
*874 EXHIBIT "C"
LIST OF ACCOUNTS
W. M. Craig Company, Inc. $ 1,600.00
Service Lumber Company 1,500.00
Home Plumbing Company, Inc. 1,600.00
Flair Construction Company, Inc. 2,000.00
Wrights Paint and Body Shop 600.00
Bayou Chateau 300.00
Fashion 220, Gulfport 300.00
Better Burger 500.00
Stones Super Market 900.00
Milton-Whitt Oil Company 1,000.00
Caver-Rains 1,000.00
Big G Motor Company 1,250.00
Temple Construction Company, Inc. 1,500.00
Cavers Drug Store, Inc. 1,000.00
Stallworth Furniture Company 600.00
Bel Air Pharmacy 300.00
Bobs Tenneco 900.00
Fashion 220, Pascagoula 300.00
Utility Engineers 450.00
Womens Clinic 2,400.00
Landco, Inc. 250.00
Tax Returns and Other 3,000.00
Dr. Wren Nealy 300.00
Willis Johnson Builders 6,000.00
Tri State Contract Interiors 285.00
Sandees Carpets and Drapes 300.00
Snelling and Snelling 600.00
Everett Hardware -0-
Jerry Lee's -0-
Markland, Inc. 350.00
Lips, Inc. -0-
Leecastle, Inc. 175.00
Bobs Mobile Homes 300.00
Total $31,560.00
EXHIBIT "D"
WORK IN PROCESS
Temple Construction Company, Inc., audit
Home Plumbing Company, Inc., audit
Big G Motor Company, audit
Willis Johnson Builders, Inc., system *
Ed Winnige, system
Fashion 220, Pascagoula and Gulfport
Dr. Wren Nealy, system
Lando, Inc., system
Taxes Prepared
Utility Engineers
Women's Clinic and Pascagoula Laboratory, Inc.
Fourth quarter Tri State Contract Interiors
By the terms of the contract the merger of the two accounting practices in the Pascagoula area in Jackson County, Mississippi, became effective on February 1, 1969, and appellee became an employee of appellants’ firm from February 3, 1969, to March 15, 1969, for a salary of $3,000 to be paid in installments of $750 each on February 15th and 28th and March 15th and 28th, 1969. In accordance with the provisions of section 5 of the contract appellee elected, on March 15, 1969, not to continue his employment with the firm.
The trial court’s award of $36,342 included the appellee’s gross billings as mentioned in paragraph 5 of the contract. We hold that this construction of the contract is in error for the reason that the $31,-560 mentioned in paragraph 5 of the contract represents a guaranty to the appellants by the appellee that the appellants would have gross billings from accounting work for the year 1969 from accounts1 listed on Exhibit “C” to the contract and if the gross billings exceeded the sum of $31,500 (obviously a typographical error, the correct amount being $31,560), then appellants would deliver to appellee a promissory note for such excess payable without interest after the last of the 51 notes matured. If gross billings were less than the sum of $31,560 appellee agreed that he would deliver to the appellants as many of the remaining maturing serially numbered promissory notes as were necessary to equal the deficiency of such gross billings.
The proper construction of the contract is that if appellee elected not to remain with the firm, the firm would assume debts in the amount of $9,351.68 as set forth in Exhibit “B” to the contract, and, in addition thereto, would pay Peavey $1,750 on March 31, 1969, and deliver to him 51 serially numbered promissory notes, each in the amount of $401, the first of said notes being due on December 10, 1969, and one note maturing on the same day of each consecutive month thereafter, all without interest, until the principal amount of the notes was paid in full. We hold that the consideration for the contract flowing to appellee in the *875 event he elected not to continue with the firm was $31,553.68, arrived at as follows:
Assumption of debts by appellants $9,351.68
Cash payment to appellee on March 31, 1969 1,750.00
51 notes for $401.00 each 20,451.00
Total $31,553.68
The contract also provides, regardless of whether Peavey remained with the firm or elected not to continue his employment, he was entitled to the following:
Cash payment for furnish-ishings and equipment $1,075.00
Assumption of payments by appellants on multilith machine 760.54
Salary through March 28, 1969 3,000.00
Total $4,835.54
Having been paid a salary of $1,500, the amount left owing to Peavey was $3,335.54.
Paragraph 6 of the contract provided that on certain accounts listed in Exhibit “D” to the contract appellee had performed work on the accounts, and that for all work performed by him on these accounts up to and including January 31, 1969, he was entitled to receive his fee which was earned for work performed up to that date. This provision is effective regardless of whether Peavey remained with or withdrew from the firm.
This case must be remanded for another hearing and an accounting between the parties, and on the remand the trial court is directed to ascertain the gross billings on work performed by the appellants on the accounts listed in Exhibit “C” of the contract and if the amounts of the gross billings exceed $31,560 appellee shall be entitled to recover any excess, and if the gross billings amount to less than $31,560, the amounts of such deficiency shall be deducted from the net recovery of the ap-pellee.
Gross billings shall include work performed by the appellants during the calendar year 1969 on the accounts listed in Exhibit “C” to the contract and if appellants delayed billing for any of the work performed during the year 1969, such amount shall be included in the gross billings. The purpose of this is to prohibit the appellants from delaying a billing until 1970 for work performed in 1969 so as to effect a deficiency in the $31,560 guarantee of gross billings made by the appellee under section 5 of the contract.
Appellants did not deliver to the ap-pellee the notes required by paragraph 5 and since the contract provided that if one or more of the notes was not paid within 60 days of its due date, all remaining and unpaid notes, at the election of the holder, should become immediately due and payable on demand, the Court holds that appellee is entitled to interest at the rate of 6% per annum on $20,451 from February 10, 1969, until date of payment, with the right of appellants to make payments of all matured amounts due as if the notes had been delivered and execute notes for the remaining balance in accordance with the terms of the contract.
Appellee testified that he paid some of the debts assumed by the appellants, as well some of the payments due on the multilith machine. On such payments appellee is entitled to interest from the date such payments were made.
For the aforesaid reasons, the trial court shall on remand of this case determine the amount due appellee in accordance with the following:
1. Appellee shall have judgment for the purchase of furnishings and equipment in the amount of $1,075 for the cash purchase price thereof plus $760.54 for assumption of payments on the multilith machine, less any payments made by the appellants. If the appellee has made any payments on the *876 multilith machine he shall be allowed interest at the rate of 6% per annum from the date such payments were made.
2. Appellee shall have judgment in the amount of $9,351.68 for the debts listed in Exhibit “B” to the contract less any payments on the debts made by. the appellants, plus interest on any of the debts paid by ap-pellee at the rate of 6% per annum from the date of such payment by appellee.
3. Appellee shall recover balance of salary due in the amount of $1,500 plus interest on $750 from March 15, 1969, and interest on $750- from March 28, 1969.
4. Appellee shall recover the cash payment of $1,750 provided for in paragraph 5, together with interest at the rate of 6% per annum on $1,750 from March 31, 1969, and shall recover $20,451 for the 51 serially numbered promissory notes which were never delivered by the appellants, together with interest on the $20,451 from February 10, 1969, as heretofore stated.
5. If the gross billings for the year 1969 by the appellants exceed $31,560, the amount of such excess shall be added to the recovery of appellee.
6. In the event gross billings for the year 1969 amount to less than $31,560, the recovery of appellee shall be reduced by the amount of such deficiency in gross billings.
7. Appellee shall be entitled to a judgment for any sums collected by the appellants for work performed by the appellee on or before January 31, 1969, on any accounts listed in Exhibit “D” to the contract.
8. The recovery of appellee shall be reduced by any amount that he collected for work performed on any of the accounts listed in Exhibit “C” or Exhibit “D” after January 31, 1969.
Reversed and remanded.
RODGERS, P. J., and JONES, SMITH and SUGG, JJ., concur.